IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PAMELA BELMONT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MEDICREDIT, INC. )<br>)<br>Defendant. ) | Case No. 2:18-cv-04102-BCW |

**MEDICREDIT INC.'S SUGGESTIONS IN SUPPORT OF**
**<u>RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Medicredit, Inc. ("Medicredit"), for good cause, states the following in support of its Motion for Summary Judgment.

Respectfully submitted,

**SPENCER FANE LLP**

DATED: April 1, 2019

/s/ *John D. Ryan*
John D. Ryan, MO #51944
1650 N. Kingshighway, Suite 204
Cape Girardeau, MO 63701
Telephone (573) 334-5449
jryan@spencerfane.com

Olawale O. Akinmoladun, MO #63442
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
Phone:    (816) 474-8100
Fax:       (816) 474-3216
wakinmoladun@spencerfane.com
**Attorneys for Medicredit**

SL 3282510.1

## TABLE OF CONTENTS

I. Concise Statement of Uncontroverted Material Facts .......................................................... 5
II. Introduction .......................................................................................................................... 9
III. Legal Standard ..................................................................................................................... 9
IV. Material Facts ..................................................................................................................... 10
V. Legal Argument .................................................................................................................. 13
    A. The April 6, 2018 Calls are not Communication in Connection with the Collection of a Debt. ............................................................................................. 14
    B. Medicredit Did Not Violate § 1692g As A Matter of Law .................................. 15
    C. Summary Judgment is Appropriate as to Count I ................................................ 16
    D. Summary Judgment is Appropriate as to Count II ............................................... 18
VI. Conclusion ......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ...................................................................................................... 10

*Caw v. Portfolio Recovery Associates, LLC*,
　2013 WL 30567 (Jan. 2, 2013, W.D.Mo.) ................................................................ 17, 18

*Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co.*,
　353 F. Supp. 2d 1053 (E.D. Mo. 2004) ........................................................................... 9

*Hennessey v. Medicredit, Inc.*,
　2018 WL 3546769 (E.D. Mo. July 24, 2018) ................................................................ 14

*Hill v. Accounts Receivable Services, LLC*,
　888 F.3d 343 (8th Cir. 2018) .......................................................................................... 17

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ......................................................................................................... 9

*May v. NCEP, LLC*,
　2014 WL 2009081 (E.D. Mo. May 16, 2014) .......................................................... 15, 16

*McIvor v. Credit Control Services, Inc.*,
　773 F.3d 909 (8th Cir. 2014) .................................................................................... 13, 14

*Pace v. Portfolio Recovery Associates, LLC*,
　872 F. Supp. 2d 861 (W.D. Mo. 2012), aff'd, 512 Fed. Appx. 643 (8th Cir.
　2013) ............................................................................................................................... 13

*Rafos v. Outboard Marine Corp.*,
　1 F.3d 707 (8th Cir. 1993) ............................................................................................... 9

*Thomas v. Corwin*,
　483 F.3d 516 (8th Cir. 2007) ......................................................................................... 10

**Statutes**

15 U.S.C. § 1692, *et seq.* ........................................................................................................ 9

15 U.S.C. § 1692c ................................................................................................................. 14

15 U.S.C. § 1692g ..................................................................................................... 15, 16, 19

15 USC §1692d ....................................................................................................................... 8

15 USC §1692f ................................................................................................................................8

15 USC § 1692g(a)(4) and (5) ......................................................................................................15

Fair Debt Collection Practices Act ................................................................................................5

Fair Debt Collection Practices Act ................................................................................................9

FDCPA............................................................................................................................... *passim*

FDCPA §§ 1692d and 1692f........................................................................................................18

FDCPA section § 1692e(10)........................................................................................................18

**Other Authorities**

FED. R. CIV. P. 56(a)....................................................................................................................9

FED. R. CIV. P. 56(e)....................................................................................................................9

**I.     Concise Statement of Uncontroverted Material Facts**

1. Plaintiff's family member received services at Good Samaritan Regional Health Center at Mt. Vernon (the "Hospital") in July of 2015 and incurred a debt to the Hospital totaling $1,241.49 for the services received (the "Debt"). **Ex. A**, at MC0001-MC0002.

2. Plaintiff was the guarantor for that debt. *See Id.* at MC0001, MC0004, and **Ex. I**, #7-11.

3. The family member passed away in May of 2017. **Ex. E**, page 2.

4. Thereafter, the Hospital sought recovery of the 2015 Debt from Plaintiff as guarantor. **Ex. A, B, D**.

5. The Hospital placed the account with Medicredit on January 1, 2018 to collect the account. **Ex. G**.

6. The entire amount of the Debt remained unpaid on January 8, 2018. **Ex. B**.

7. On January 8, 2018, Medicredit issued the Initial Communication letter to Plaintiff at her home. **Ex. B, Ex. I** (#1-6).

8. That letter gave Plaintiff instructions on how to pay and how to dispute the Debt if she wished to do so, in compliance with the Fair Debt Collection Practices Act (the "FDCPA"). **Ex. B**.

9. On March 28, 2018, Medicredit issued a Financial Assistance letter to Plaintiff. **Ex. D**.

10. On April 6, 2018, Plaintiff called Medicredit, twice. **Ex. C, E, F, H** (#3) **and I** (#12).

11. During the first call, Plaintiff acknowledged the Debt and its source.

| Belmont: | I am. But this is not my account. This is my husband's account. So I wanted to speak with accounts. |
|---|---|

| Medicredit: | Wrong party. Yes ma'am. Okay. Give me one moment please. Okay so this was supposed to be put in your husband's name? |
|---|---|
| B: | It was in my husband's name, but he passed away and they put it in my name. |

**Ex. C, E**.

12. Medicredit responded by attempting to explain how this sometimes happens, and the process to present the issue to the treating hospital.

| M: | You don't know if you signed in. It's been a little while. Yes. Okay. We're going to send this information…I'm going to have to send this information to…So let me ask you a question. This came in as your name, so normally what happens if you're with someone, husband, wife, child whatever, if you take that person and sign them in…sometimes it happens. I'm just letting you know that they will put it in the person's name who is with them maybe and just signed them in. We're just giving you an example. And sometimes when that happens they will put it in your name. So the hospital never did put this in your husband's name. They put it in your name. |
|---|---|

**Ex. E**.

13. Plaintiff further acknowledged that the Debt was properly in her husband's name until his death, and then transferred to her name as guarantor, and offered to fax relevant information to Medicredit to facilitate that process.

| B: | Well it was in his name first. |
|---|---|
| M: | Do you have anything that you can fax us that shows that that was in his name at first? |
| B: | Um. I have to look that up. It was in his name. It was in his name until passed, so then they changed it to my name. |
| M: | Okay. Can you please get some information? Some proof that it was in his name? That way we can send it back and get that reversed? |
| B: | Let's see. Do you have a number where I can…What am I supposed to do? Fax it to you? |
| M: | Yes. Yes I have a fax number. |
| B: | Okay. |

**Ex. E**.

14. At the conclusion of the call, Plaintiff indicated she would do some research and get back to Medicredit.

| B: | Okay Lisa. I'll see what I can come up with and if I can find that. |

**Ex. E**.

15. Plaintiff called Medicredit nine (9) minutes later, with additional information.

| B: | Yes. But I was going to tell her, what I was going to tell her, actually this was on a credit card in my husband's name from the hospital. |
| M: | Okay. |
| B: | Remember those credit cards that they offer you? I forgot the name of it. |
| M: | Yes ma'am. I know what you're saying…like an HSA card. Yes ma'am. |
| B: | Yeah. It was on one of those. Well no. It's a credit card they offer you to pay your bill. |
| M: | Okay. There's a differ… |
| B: | Then when my husband died, the credit card sent it back to the hospital. |

**Ex. C, F**.

16. At that time, Medicredit tried to get Plaintiff to send information that would help the Hospital investigate what happened with the debt.

| M: | What you would need to do, is do this. You will still have to fax that info…everything you just told me because Medicredit will have to do is forward that over to the hospital, so they can investigate that to find out …if they still have that credit card or what's going on with that so they can get… |

**Ex. F**.

17. Plaintiff then admitted that the Hospital was aware of the situation, and that she understood she was responsible for the Debt as guarantor.

| Belmont: | Now they already know my husband died and everything. They've already…I've already been through this whole process with them. And they've told me that basically because I signed him in that it was my responsibility for the debt. |

7

SL 3282510.1
Case 2:18-cv-04102-BCW   Document 43   Filed 04/01/19   Page 7 of 20

**Ex. F**.

    18.    Only at this point did Plaintiff express her wish to dispute the bill.

| M: | Yes ma'am. |
|---|---|
| B: | So me sending you that fax is really not going to do any good. So I wanted to try to dispute this bill, so I didn't know how I would go about that. |

**Ex. F**.

    19.    At that point, Medicredit marked the account in dispute which was acknowledged by letters to Plaintiff on April 17, 2018 and April 18, 2018. **Ex. G, J**.

    20.    Plaintiff has explained that the purpose of the April 6, 2018 calls was so that Plaintiff could dispute the alleged debt incurred by her deceased husband. **Ex. H,** #3**.**

    21.    Medicredit never told "Plaintiff that she needed to contact the original creditor to get the original contract for the debt." (Quote from ECF Doc. 1-1, ¶ 22) as compared to **Ex. E and F**.

    22.    Plaintiff did not ask to validate the debt on April 6, 2018.  (ECF Doc. 1-1 ¶¶ 17 & 25) as compared to **Ex. E and F.**

    23.    Plaintiff did not consider the content of the April 6, 2018 phone calls 'unfair' as that term is used in 15 USC §1692f.  **See Ex. I** #18-23.

    24.    Plaintiff did not consider the content of the April 6, 2018 phone calls 'harassing' as that term is used in 15 USC §1692d.  **See Ex. I** #24-27.

    25.    Plaintiff's response was the Complaint filed on April 25, 2018, alleging that Medicredit violated certain sections of the FDCPA.  *See generally* [ECF Doc. 1-1].

    26.    There is also no dispute that April 6, 2018 is more than 30 days <u>after</u> January 2, 2018.  **Ex. I, #13**

27. Medicredit properly removed the case to this Court on May 23, 2018. [ECF Doc. 1].

28. On May 23, 2018, Medicredit filed its Answer and Affirmative Defenses that fervently denied Plaintiff's allegations. *See generally* [ECF Doc. 3].

## II. Introduction

Plaintiff has alleged that Medicredit violated the Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. § 1692, *et seq*.) during two phone calls on April 6, 2018. *See generally* [ECF Doc. 1-1 ¶ 14]. Medicredit denies the allegations. *See generally* [Doc. 3]. There are no facts in dispute, but the parties differ on the application of the law to the content of the two phone calls. Because there are no issues of material fact, summary judgment is appropriate in favor of Medicredit.

## III. Legal Standard

Summary judgment is appropriate if the movant establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "A fact is 'material' if it might affect the outcome of the case and a factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co.*, 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004) (citation omitted).

If the moving party presents sufficient evidence to establish that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law, the nonmoving party must come forward with specific facts to establish that a genuine and material factual issue remains for resolution at trial. FED. R. CIV. P. 56(e). *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A party opposing summary judgment "may not rest

9

SL 3282510.1
Case 2:18-cv-04102-BCW   Document 43   Filed 04/01/19   Page 9 of 20

upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, (1986).

"Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007) (citation omitted). In this case, the material facts of the case have been strictly limited by the Plaintiff's allegations [Doc 1-1, ¶ 14]. There are no genuine issues of material fact in this case and Medicredit is entitled to judgment as a matter of law.

## IV. Material Facts

This case involves debt incurred during a hospital visit in July, 2015 (Statement of Facts ("SOF") ¶ 1). At that time, Plaintiff identified herself as <u>guarantor</u> for the fees and costs incurred for the treatment (SOF ¶ 2). That patient passed away in May, 2017 (SOF ¶ 3). The hospital then sought recovery of the 2015 debt from the Plaintiff/<u>guarantor</u> (SOF ¶4). On January 8, 2018, Medicredit issued a letter addressed to Plaintiff at her home (the "Initial Communication") (SOF ¶¶ 5-8). On March 28, 2018, Medicredit issued a Financial Assistance letter to Plaintiff (SOF ¶ 9). On April 6, 2018, Plaintiff called Medicredit, twice, to dispute the debt (SOF ¶¶ 10, 19). Those two calls were recorded and have been provided to the Court, the transcripts of which are attached to the Statement of Facts as Exhibit **E** and **F**.

During the first call, Plaintiff acknowledged the Debt, and its source.

| Belmont: | I am. But this is not my account. This is my husband's account. So I wanted to speak with accounts. |
| --- | --- |
| Medicredit: | Wrong party. Yes ma'am. Okay. Give me one moment please. Okay so this was supposed to be put in your husband's name? |
| B: | It was in my husband's name, but he passed away and they put it in my name. |

(SOF ¶ 11). Medicredit responded by attempting to explain how this sometimes happens, and the process to present the issue to the treating hospital.

| M: | You don't know if you signed in. It's been a little while. Yes. Okay. We're going to send this information…I'm going to have to send this information to…So let me ask you a question. This came in as your name, so normally what happens if you're with someone, husband, wife, child whatever, if you take that person and sign them in…sometimes it happens. I'm just letting you know that they will put it in the person's name who is with them maybe and just signed them in. We're just giving you an example. And sometimes when that happens they will put it in your name. So the hospital never did put this in your husband's name. They put it in your name. |

(SOF ¶ 12).

Plaintiff further acknowledged that the Debt was properly in her husband's name until his death, and then transferred to her name as guarantor, and offered to fax relevant information to Medicredit to facilitate that process.

| B: | Um. I have to look that up. It was in his name. It was in his name until passed, so then they changed it to my name. |
| M: | Okay. Can you please get some information? Some proof that it was in his name? That way we can send it back and get that reversed? |
| B: | Let's see. Do you have a number where I can…What am I supposed to do? Fax it to you? |
| M: | Yes. Yes I have a fax number. |
| B: | Okay. |

(SOF ¶ 13).

At the conclusion of the call, Plaintiff indicated she would do some research and get back to Medicredit (SOF ¶ 14). Nine minutes later, Plaintiff called Medicredit with additional information.

| B: | Yes. But I was going to tell her, what I was going to tell her, actually this was on a credit card in my husband's name from the hospital. |
| M: | Okay. |

11

| B: | Remember those credit cards that they offer you? I forgot the name of it. |
|---|---|
| M: | Yes ma'am. I know what you're saying…like an HSA card. Yes ma'am. |
| B: | Yeah. It was on one of those. Well no. It's a credit card they offer you to pay your bill. |
| M: | Okay. There's a differ… |
| B: | Then when my husband died, the credit card sent it back to the hospital. |

(SOF ¶ 15).

At that time, Medicredit tried to get Plaintiff to send information that would help the Hospital investigate what happened with the debt.

| M: | What you would need to do, is do this. You will still have to fax that info…everything you just told me because Medicredit will have to do is forward that over to the hospital, so they can investigate that to find out …if they still have that credit card or what's going on with that so they can get… |
|---|---|

(SOF ¶ 16).

Plaintiff then admitted that the Hospital was aware of the situation, and that she understood she was responsible as the guarantor of the debt.

| B: | Now they already know my husband died and everything. They've already…I've already been through this whole process with them. And they've told me that basically because I signed him in that it was my responsibility for the debt. |
|---|---|

(SOF ¶ 17).  Only at this point did Plaintiff express her wish to dispute the bill.

| M: | Yes ma'am. |
|---|---|
| B: | So me sending you that fax is really not going to do any good. So I wanted to try to dispute this bill, so I didn't know how I would go about that. |

(SOF ¶ 18).

Medicredit marked the account in dispute, which was acknowledged by letters to the Plaintiff on April 17 and 18, 2018. (SOF ¶ 19). Those two calls are the only communications Plaintiff alleges violated the FDCPA [Doc. 1-1, ¶ 14]. Plaintiff explained that she called Medicredit on April 6, 2018 for the sole purpose of disputing the debt. (SOF ¶ 20).  Plaintiff

also acknowledged that the communication with Medicredit did not violate the essential elements of the FDCPA (SOF ¶ 23-24). Despite that, Plaintiff filed the Complaint on April 25, 2018 (SOF ¶ 25).

## V. Legal Argument

It is often overlooked in the rush to file suit that the purpose of the FDCPA is to "eliminate <u>abusive</u> debt collection practices by debt collectors" § 1692(a) (<u>emphasis</u> added). With the FDCPA, Congress sought to prevent abusive practices including "threats of violence; ... the publishing of 'shame lists'; harassing or anonymous telephone calls; impersonating a government official or attorney; ... obtaining information under false pretenses; [and] collecting more than is legally owing." See *McIvor v. Credit Control Services, Inc.*, 773 F.3d 909, 913 (8th Cir. 2014) *citing* S.Rep. No. 95–382, reprinted in 1977 U.S.C.C.A.N. 1695, 1698 (1977). There is no evidence of abusive behavior in this case (SOF ¶¶ 24-25).

In order to establish a violation of the FDCPA, Plaintiff must demonstrate that: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. *See Pace v. Portfolio Recovery Associates, LLC*, 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012), <u>aff'd,</u> 512 Fed. Appx. 643 (8th Cir. 2013). In this case, Plaintiff received two letters from Medicredit to collect a debt for which she is the guarantor (SOF ¶¶ 1, 2, 7, 9). Medicredit did not place any calls to Plaintiff. The only telephone contact between the parties occurred when Plaintiff called Medicredit. Plaintiff has no evidence that Defendant has violated the third element described here.

13

The Complaint limited its allegations to the two calls Plaintiff placed to Medicredit on April 6, 2018. Nothing in those two calls was prohibited by the FDCPA or represent a failure to comply with the FDCPA and summary judgment is appropriate on these uncontested facts.

**A.      The April 6, 2018 Calls are not Communication in Connection with the Collection of a Debt.**

The Plaintiff has indicated that "[t]he purpose of the communication was so that Plaintiff could dispute the alleged debt incurred by her deceased husband." (SOF ¶ 13). The Eighth Circuit has joined the Third, Sixth, and Seventh Circuits in holding that for 15 U.S.C. § 1692c, "a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *McIvor* 773 F.3d at 914 (citing *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266-67 (3d Cir. 2013); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); and *Gburek v. Litton Loan Serviing LP*, 614 F.3d 380, 385 (7th Cir. 2010)). This "same analysis excludes claims based on sections 1692d, 1692e, and 1692f, all of which require that the alleged misconduct be in connection to the collection of a debt." *Hennessey v. Medicredit, Inc.*, 2018 WL 3546769, at *3 (E.D. Mo. July 24, 2018).

In this case, Plaintiff's own words indicated that the animating purpose of the calls was NOT to make a payment toward this debt (SOF ¶ 13). On the first call she opens the call with "this is not my account" (SOF ¶ 11). The second call opens with "this was on a credit card in my husband's name" (SOF ¶ 15). The content of the calls is focused on Medicredit's attempt to assist Plaintiff with her issue so it could be presented to the treating facility (SOF ¶¶ 12, 13, 14, 16, 18). Plaintiff ultimately abandoned that process in favor of this litigation. (SOF ¶ 25).

Objectively, Plaintiff did not place the calls with the "animating purpose" to make or induce a payment. Because the purpose of the two calls were not for the animating purpose of inducing payment, the calls are not communications in connection with the collection of a debt.

14

SL 3282510.1
Case 2:18-cv-04102-BCW   Document 43   Filed 04/01/19   Page 14 of 20

As a result, there is no legal basis for an FDCPA violation, and Medicredit is entitled to judgment as a matter of law.

### B. Medicredit Did Not Violate § 1692g As A Matter of Law

All of Plaintiff's specific claims in Counts I and II are premised on the false notion that the statements made by Medicredit on April 6, 2018 were false, misleading, deceptive, or unfair <u>because</u> they overshadowed her § 1692g right to orally dispute her debt [Doc. 1-1]. Without the foundation of § 1692g to support those allegations, Count I and Count II fail as a matter of law and summary judgment in favor of Medicredit is appropriate.

Overshadowing is found only in § 1692g(b) which states in part:

> …Any collection activities and communication <u>during the 30-day period</u> may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

§ 1692g(b), (<u>emphasis added</u>). In order for Plaintiff to prevail on an overshadowing claim, the communication at issue must occur <u>within the 30-day</u> notice period, triggered by the initial communication. *See* § 1692g(b), *see also May v. NCEP, LLC*, 2014 WL 2009081, at *5 (E.D. Mo. May 16, 2014) (where there was "no factual dispute that these statements were made well outside May's dispute period and therefore could not have "overshadowed" her dispute rights as a matter of law.). In this case, the initial communication was sent on January 8, 2018 (SOF ¶¶ 5-8). There is also no dispute that April 6, 2018 is more than 30 days <u>after</u> January 8, 2018 therefore removing any overshadowing concerns of § 1692g(b) from this case as a matter of law (SOF ¶ 26).

The Complaint also argues that Plaintiff had an unalienable right, based in § 1692g, to orally dispute her debt on April 6, 2108 (Doc 1-1, ¶31). This allegation is not supported by the statute or case law. In fact, § 1692g indicates that the dispute must be in writing. *See* 15 USC § 1692g(a)(4) and (5). The Complaint cites to a series of cases in paragraph 27. Each and every

15

SL 3282510.1
Case 2:18-cv-04102-BCW   Document 43   Filed 04/01/19   Page 15 of 20

one relates to language in a written initial communication, not phone calls 90 days later (*See* Doc 1-1, ¶ 27). The initial communication is not the subject of the Complaint, neither is the language of any letter issued to Plaintiff. As a result, the cases cited in the Complaint have no relevance or legal bearing on the allegations about the two phone calls placed by Plaintiff on April 6, 2018.

Again, the events described in the Complaint occurred during 2 phone calls (not letters) almost 90 days after (not within 30 days of) the initial contact, and, as a result, 15 U.S.C. § 1692g does not apply. *See May* at *5. Because there is no factual dispute that these calls were made well outside Plaintiff's dispute period Medicredit could not have "overshadowed" her dispute rights as a matter of law. As a result, Plaintiff's specific claims for relief (Count I and Count II) also fail as a matter of law.

### C. Summary Judgment is Appropriate as to Count I

Plaintiff's Count I alleges violation of § 1692e, which states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specifically, Plaintiff alleges violation of § 1692e(2), the false representation of the character, amount, or legal status of any debt [Doc 1-1, ¶ 43]; § 1692e(5), the threat to take any action that cannot legally be taken or not intended to be taken [Doc 1-1, ¶ 44]; and § 1692e(10), the use of false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer [Doc 1-1, ¶ 45].

First, the communications at issue are not communications in connection with the collection of a debt. *See* III.a. Supra. The call recordings do not contain statements which violate the statute because there were no false, deceptive, or misleading representations made in connection with the collection of a debt. The call recordings simply reflect Medicredit's effort to assist the Plaintiff with the issue and forward information to the treating facility (SOF ¶ 12, 13, 14, 16, 18). In addition, allegations that Medicredit told Plaintiff she needed to contact the

16

SL 3282510.1
Case 2:18-cv-04102-BCW   Document 43   Filed 04/01/19   Page 16 of 20

facility herself, or denied her validation of the debt, remain unsupported by any evidence (SOF ¶ 20, 21).

The Eighth Circuit recently joined other Circuits to conclude that the evaluation of § 1692e requires a measure of materiality such that "[a] statement cannot mislead unless it is material," and "a false but non-material statement is not actionable." *Hill v. Accounts Receivable Services, LLC*, 888 F.3d 343, 345–46 (8th Cir. 2018) (quoting *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 at 785 (7th Cir. 2009). In order for Plaintiff to prevail on Count I of her Complaint, she must identify a material false representation, deceptive means, or threats used to collect a debt. *See Hill,* 888 F.3d at 346. The call transcripts from April 6, 2018 do not, as a matter of law, contain deceptive statements or false innuendo, material or otherwise nor do the April 6, 2018 calls contain any threats from Medicredit. *See Caw v. Portfolio Recovery Associates, LLC*, 2013 WL 30567, *3 (Jan. 2, 2013, W.D.Mo.) (where the record lacks any evidence which points to any particularly egregious conduct on the part of the Defendant, summary judgment is appropriate).

Plaintiff has identified only three statements that she asserts were inaccurate, false, misleading, or threatening in response to Interrogatories (Exhibit H, ¶ 7) but there is no evidence to support the conclusion that these statements are <u>materially</u> inaccurate, false, misleading, or threatening. To the contrary, each of these statements is materially accurate. The debt was placed with Medicredit on January 1, 2018 and would be eligible for credit reporting after 5 months, so "it is eligible for credit report in May; we have to act quickly" is an accurate statement of action that Medicredit can take. In addition, suggesting that "you can dispute it, but you still have to mail or fax the information" is an accurate recitation of the dispute process outlined by the FDCPA. *See* III.a. above. Because there is also no evidence of material false

representation, deceptive means, or threat, Medicredit is entitled to judgment as a matter of law as to Plaintiff's § 1692e(2) and (5) allegations.

Plaintiff's counsel has further argued that Medicredit violated section § 1692e(10) of the FDCPA by asking Plaintiff too many questions on April 6, 2018. There is simply no law to support this argument. The questions were not misleading or abusive, nor did they improperly overshadow the Plaintiff's dispute rights more than ninety (90) days after the initial communication. As a result, Medicredit is entitled to judgment as a matter of law on the § 1692e(10) allegations.

### D. Summary Judgment is Appropriate as to Count II

Plaintiff's Count II alleges violation of §§ 1692d and 1692f of the FDCPA for harassment or abuse [Doc 1-1, Complaint ¶¶ 50-51], false or misleading representations and unfair practices [Doc 1-1, Complaint ¶¶ 52-54]. Again, the only communications at issue here are the April 6, 2018 telephone calls, initiated by Plaintiff to Medicredit, which are not communications in connection with the collection of a debt. *See* III.a. above. Plaintiff admitted that the she did not consider the content of the April 6, 2018 calls unfair or harassing (SOF ¶ 24-25). Additionally, the record of those calls lack any evidence which points to any particularly egregious conduct on the part of the Defendant. *See Caw v. Portfolio Recovery Associates, LLC*, at *3. The Plaintiff placed the calls, so at no point can the Defendant be accused of reaching out to harass this Plaintiff. The transcripts reveal that Medicredit's agents compassionately tried to understand Plaintiff's dispute and offered her a fax number to deliver that information so that Medicredit could advance her dispute to the hospital on her behalf. (SOF ¶ 17, 20, 23). Despite the offer, Plaintiff did not provide evidence to Medicredit to support her contention that the debt was not hers. (SOF ¶ 26). Without evidence of any particularly egregious conduct on the part of the Defendant, Medicredit is entitled to judgment as a matter of law.

## VI. Conclusion

The April 6, 2018 calls do not evidence abusive debt collection practices by a debt collector. In this case, Plaintiff has admitted that the 'animating purpose' of her calls to Medicredit was to orally dispute a debt (not to induce payment). These calls were made well outside the 30 day dispute period, and thus the calls are not subject to § 1692g. Without the foundation of § 1692g to support the remaining allegations, they fail as a matter of law. There is no evidence of material false representations, deceptive means, or threats, or language that is harassing, abusive, misleading or unfair to sustain the claims brought in Plaintiff's Complaint.

Thus, Medicredit is entitled to judgment as a matter of law on any and all alleged violations of §§1692e(2), (5), (10), §1692d and § 1692f.

Respectfully submitted,

**SPENCER FANE LLP**

**DATED: April 1, 2019**

/s/ *John D. Ryan*
John D. Ryan, MO #51944
1650 N. Kingshighway, Suite 204
Cape Girardeau, MO 63701
Telephone (573) 334-5449
jryan@spencerfane.com

Olawale O. Akinmoladun, MO #63442
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
Phone: (816) 474-8100
Fax: (816) 474-3216
wakinmoladun@spencerfane.com
**Attorneys for Medicredit**

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 1st day of April, 2019, I electronically filed the foregoing through the Court's CM/ECF system which will send notification to the following counsel of record:

Joel S. Halvorsen
Gregory M. Klote
HALVORSEN KLOTE
680 Craig Road, Suite 104
St. Louis, MO 63141
**ATTORNEYS FOR PLAINTIFF**

*/s/ John D. Ryan*
**Attorney for Medicredit, Inc.**